# EXHIBIT 1

FILED

2019 MAR 29  PM 5: 00

CIVIL
DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

NO. _19- 3466_

_I-14_

DIVISION "___"

**THE CITY OF NEW ORLEANS**

VS.

**APACHE LOUISIANA MINERALS LLC; ASPECT ENERGY, L.L.C.; CHAPARRAL ENERGY, L.L.C.; CHEVRON U.S.A. INC.; COLLINS PIPELINE COMPANY; ENTERGY NEW ORLEANS, LLC; EOG RESOURCES, INC.; EXXONMOBIL PIPELINE COMPANY; GULF SOUTH PIPELINE COMPANY, LP; SOUTHERN NATURAL GAS COMPANY, L.L.C.; WHITING OIL AND GAS CORPORATION**

FILED:_____              _____

                                                    **DEPUTY CLERK**

## PETITION FOR DAMAGES AND INJUNCTIVE RELIEF AND DAMAGES UNDER THE LOUISIANA STATE AND LOCAL COASTAL RESOURCES MANAGEMENT ACT

Plaintiff, the City of New Orleans ("the City" or "New Orleans"), files this Petition for Damages and Injunctive Relief pursuant to the Louisiana State and Local Coastal Resources Management Act of 1978, La. R.S. §§ 49:214.21 *et seq.* ("SLCRMA"), against the defendants named herein as follows:

### INTRODUCTION

1. New Orleans is imperiled. As recognized by the report, *Coast 2050: Toward a Sustainable Coastal Louisiana*,[1] "[n]o other major city in the country is surrounded by so many flood-prone habitats. New Orleans is virtually an island already; as wetland loss continues, the amount of water around the city will increase. In addition, at least 45% of the metropolitan core is at or below sea level. … The wetlands buffer that now partially protects New Orleans from storm surges is disappearing."[2]

2. New Orleans itself is home to these vanishing wetlands—from the lands fed by and bordering Bayou Bienvenue to the wetlands areas around Bayou Sauvage and bordering Lake Pontchartrain in New Orleans East, to the Lake St. Catherine area and on through the East Orleans Land Bridge and the lands bordering Lake Borgne. Indeed, just in the East Orleans

---

[1] Report of the Louisiana Coastal Wetlands Conservation and Restoration Task Force and the Wetlands Conservation Restoration Authority (La. Dept. of Natural Resources 1998) (available at www.coast2050.gov).
[2] *Id.* at 63.

Land Bridge Area, the United States Geological Survey estimates that, since 1932, more than 5,470 acres of marsh have been lost.

3. These coastal lands contain a rich and diverse natural environment found in few other places. Formed over the past 6,000 years, these dynamic lowlands offer an unsurpassed natural bounty. The paramount role of these wetland and marsh environments in the development, sustenance, and protection of the citizens and culture of New Orleans and Louisiana is unmistakable, as coastal inhabitants have flourished within the bayou wetlands and the city of New Orleans has grown and thrived behind their protective buffer.

4. Coastal lands, however, are quickly disappearing as a result of the failures of oil and gas exploration and production and pipeline actors to maintain and control the effect of their activities on the coastal environment in the vicinity of New Orleans—in a manner that members of that industry, including the Defendants here, specifically foresaw.

5. As a result, New Orleans faces grave harms. The Gulf of Mexico is perched on her stoop. Commerce, transportation, culture, the economy, and—most importantly—the people are in danger.

6. For many decades, each Defendant has engaged in and enabled a course of continuous and relentless dredging, drilling, extracting, and transport of oil and gas in and across the coastal wetlands in New Orleans. Oil and gas exploration and production activities have included a multitude of access canals and other activities, the failure to maintain which directly harms the coastal wetlands; and, to transport the mineral riches of Louisiana to processing and refining facilities and the rest of the country, pipeline companies have gashed long, straight conduits, which, again, they have failed to adequately maintain and protect such that they have become wetlands-destroying forces through the coastal zone.

7. These activities by each Defendant constitute coastal "uses" under the SLCRMA, and are subject to regulatory requirements under that statute.

8. Because each Defendant failed to either contain its operations within permitted bounds or to secure a coastal use permit when required, to simply follow the rules, to fix what they broke, the network of canals and other facilities they allowed to degrade the coastal lands has ravaged New Orleans' protective landscape.

9. As detailed below, however, the City has hope; the SLCRMA provides parishes like Orleans Parish, that have an approved program under the statute, with a set of remedies and a clear path toward restoration of the protective coastal lands.

**PARTIES**

10. **Plaintiff.** The City of New Orleans is a political subdivision of the State of Louisiana, established by the Home Rule Charter of the City of New Orleans. The City is coterminous with the Parish of Orleans, serves as the governing unit for the Parish of Orleans, and exercises the authority of the Parish of Orleans as an approved Parish Coastal Management Program under the Louisiana State and Local Coastal Resources Management Act of 1978.

11. **Defendants.** Made defendants herein are those oil and gas exploration and production companies and pipeline companies identified below, which, by virtue of mergers, acquisitions, name changes, etc., are responsible for those entities that have constructed and then failed to adequately maintain pipelines, canals, and other oil and gas exploration and production facilities and operations within the boundaries of the City:

    11.1.   Apache Louisiana Minerals LLC, a Delaware corporation with its principal business establishment in Houston, Texas.

    11.2.   Aspect Energy, LLC, a Colorado limited liability company with its principal business establishment in Denver, Colorado.

    11.3.   Chaparral Energy, L.L.C., an Oklahoma limited liability company with its principal business establishment in Oklahoma City, Oklahoma.

    11.4.   Chevron U.S.A. Inc., a Pennsylvania corporation with its principal business establishment in San Ramon, California.

    11.5.   Collins Pipeline Company, a Delaware corporation with its principal business establishment in Houston, Texas.

    11.6.   Entergy New Orleans, LLC, a Texas limited liability company with its principal business establishment in New Orleans, Louisiana, individually and as successor to Entergy New Orleans, Inc. Entergy New Orleans, LLC's member, Entergy Corporation, is incorporated in Delaware and has its principal place of business in New Orleans, Louisiana.

* * *

3

11.7.   EOG Resources, Inc., a Delaware corporation with its principal business establishment in Houston, Texas, individually and as successor to Florida Exploration Company, and Coastal Production Company.

11.8.   ExxonMobil Pipeline Company, a Delaware corporation with its principal business establishment in Spring, Texas.

11.9.   Gulf South Pipeline Company, LP, a Delaware limited partnership with its principal business establishment in Houston, Texas.

11.10.  Southern Natural Gas Company, L.L.C., a Delaware limited liability company with its principal business establishment in Houston, Texas, individually and as successor to Southern Natural Gas Company.

11.11.  Whiting Oil and Gas Corporation, a Delaware corporation with its principal business establishment in Denver, Colorado, individually and as successor to Whiting Petroleum Corporation.

## JURISDICTION AND VENUE

12. Venue and jurisdiction are proper in this Court pursuant to La. R.S. § 49:214.36(G) because Defendants' coastal uses are situated within the coastal zone of Orleans Parish ("the Orleans Coastal Zone").

## BACKGROUND FACTS

13. **The Disappearing Coastal Lands**

13.1.   The coastal lands in New Orleans—including wetlands and marshes—are critical components in protecting the City.

13.1.1. These coastal lands are the first line of defense for New Orleans against the destructive force of hurricanes and tropical storms.

13.1.2. These coastal lands form a buffer that reduces the height and energy of storm surge and waves.

13.1.3. Hurricanes and tropical storms lose intensity as they travel over land. Hence, the more land that a storm must traverse before reaching the City, the weaker that storm's impact on the City, its inhabitants, and the economic, commercial, and cultural activities sustained therein. Conversely, the closer that open water

* * *
4

gets to the City, the greater the strength of storms and all their attendant effects as they hit the City's doorstep.

13.2.    In the SLCRMA, the Louisiana Legislature has declared with regard to coastal land loss: "Hurricane protection and coastal restoration must be integrated to achieve a long-term solution of coastal protection. In addition to immediate needs for hurricane protection, coastal land loss in Louisiana continues in catastrophic proportions. Wetlands loss threatens valuable fish and wildlife production and the viability of residential, agricultural, energy, and industrial development in coastal Louisiana." La. R.S. § 49:214.1(A).

13.3.    The SLCRMA also declares it "the public policy of the state to develop and implement, on a comprehensive and coordinated basis, an integrated coastal protection program in order to reduce if not eliminate the catastrophic rate of coastal land loss in Louisiana." La. R.S. § 49:214.1(D).

13.4.    The SLCRMA defines the Louisiana Coastal Zone as "the coastal waters and adjacent shorelands within the boundaries of the coastal zone …, which are strongly influenced by each other, and in proximity to the shorelines, and uses of which have a direct and significant impact on coastal waters." La. R.S. § 49:214.23(5). Coastal waters are, in turn, defined as "bays, lakes, inlets, estuaries, rivers, bayous, and other bodies of water within the boundaries of the coastal zone which have measurable seawater content (under normal weather conditions over a period of years)." La. R.S. § 49:214.23(4). The specific delineation of the geographic boundaries of the Louisiana coastal zone entirely envelop the City. La. R.S. § 49:214.24(C).

13.5.    The coastal lands within the City are the arena for economic activities and unique cultural experiences, providing a physically protected and hydrologically and ecologically balanced and appropriate venue for oil and gas exploration and production and pipeline activities and transportation, shipping-related ventures, and activities related to tourism and the seafood industry. As the intact character of this balanced but fragile landscape deteriorates due to coastal uses that are either

unpermitted or that are not in compliance with their coastal use permits, and that are in violation of regulatory requirements, these activities are harmed.

13.6.   For example, the United States Geological Survey estimates that 5,470 acres of marsh have been lost in the East Orleans Land Bridge area since 1932. The Lake Pontchartrain Basin Foundation ("LPBF") measures the loss of wetlands in the Alligator Bend area of New Orleans, adjacent to Lake Borgne, at more than 1,000 acres, converted into open water.

13.7.   The LPBF notes that, with regard to wetlands loss along the northern shore of Lake Borgne, "[c]ontinued shoreline erosion and future storms could create a direct path of open water connecting the GIWW [Gulf Intracoastal Water Way] and Lake Borgne and threaten the integrity of this important land bridge."

13.8.   The coastal lands that remain in the Orleans Coastal Zone have been left severely diseased by the constant intrusion of corrosive saltwater and the introduction of wave action and other erosive forces through the lack of maintenance of artificial canals dredged or controlled by each Defendant, leaving those coastal lands highly susceptible to being washed away by the next storm.

13.9.   These coastal lands have also been lost or severely damaged by other pollution and contaminants introduced by the activities of each Defendant, including through the use of unlined and unpermitted waste pits and other contamination events.

13.10.  In short, the Orleans Coastal Zone is essential to the protection, identity, and existence of the City. Without those coastal lands, the City faces harsh damages and a grave threat to its very existence from increased storm surge and from an abundance of open water to fuel storms' strength right up until the moment they make landfall at New Orleans.

13.11.  In addition, the City is imperiled by the damage to the wetlands in the coastal zone of those Parishes situated between Orleans Parish and the Gulf of Mexico, as coastal uses by the Defendants turn once healthy marsh into open water, leaving an open path for storm surge and erosive forces right up to the City's doorstep.

14. **The Defendants' Coastal Use Conduct**

14.1.   The SLCRMA specifically regulates and requires permits for "uses" in the Coastal Zone. La. R.S. § 49:214.30. A "use" is "any use or activity within the coastal zone which has a direct and significant impact on coastal waters." La. R.S. § 49:214.23(13). "Uses of state concern" include "[a]ny dredge or fill activity which intersects with more than one water body," "[p]rojects involving use of state owned lands or water bottoms," "[a]ll mineral activities, including exploration for, and production of oil, gas, and other minerals, all dredge and fill uses associated therewith, and all other associated uses," "[a]ll pipelines for the gathering, transportation or transmission of oil, gas and other minerals," and "[e]nergy facility siting and development." La. R.S. § 49:214.25(A)(1)(a), (b), (f), (g), (h). "Uses of local concern" include "[p]rivately funded projects which are not uses of state concern," "[m]aintenance of uses of local concern," "[d]redge or fill projects not intersecting more than one water body," "[m]aintenance dredging," and "[u]ses on cheniers, salt domes, or similar land forms." La. R.S. § 49:214.25(A)(2)(a), (c), (e), (i), (k).

14.2.   Defendants have engaged in uses of state and local concern subject to SLCRMA within the Orleans Coastal Zone.

14.3.   The oil and gas industry began exploration and development in Louisiana's coastal zone, including in the Orleans Coastal Zone, in the first half of the 20th century, prompting approximately 100 years of profitable oil and gas exploration and production, including by the Defendants here.

14.4.   Enabling and transporting this production and exploration activity, each Defendant participated in the dredging of a network of canals to access, construct, and maintain pipelines and related production and exploration facilities.

14.5.   These canals were dredged to a specified width measured at the water line.

14.6.   The dirt removed to create the pipeline and access canals—the "spoil"—was dumped in long, tall lines parallel to the canals on either side, known as "spoil banks."

14.7.   Defendants have not employed bank-stabilization methods in the maintenance of their canals through the Orleans Coastal Zone.

14.8.   Even in the instances when a Defendant constructed dams, bulkheads, or gates, it did not maintain them to ensure their continued efficacy.

14.9.   As a result of each Defendant's failures to engage in measures that would maintain the widths of the canals at their constructed parameters, those canals have quickly and foreseeably widened to widths far greater than their constructed widths—often double or triple the constructed width, and even eroding fully into open water.

14.10.  As a result of each Defendant's failure to properly place spoil from the construction of the canals in a manner that would not cut off natural bayous and water bodies and their ability to spread sediment throughout the marsh and replenish the land, and that would not cause greater subsidence and the creation of spoil flank ponds, additional loss of land has been caused.

14.11.  Additionally, the oil and gas operations and activities of the Defendants included the construction and use of unlined earthen waste pits, many of which have never been closed pursuant to applicable state laws and regulations (including regulations promulgated pursuant to the SLCRMA, Statewide Order 29-B, and the Louisiana Risk Evaluation/Corrective Action Program ("RECAP")). Construction and use of these waste pits constitute coastal uses subject to the SLCRMA.

14.12.  The Defendants' use of waste pits in the Orleans Coastal Zone, and their failure to properly close those pits and otherwise comply with the regulations promulgated under the SLCRMA, have caused damage to the Orleans Coastal Zone.

14.13.  The Defendants, in conducting oil and gas exploration and production activities, have also discharged or disposed of oilfield wastes from their waste pits and/or from their other oil and gas operations directly into the coastal lands and waters of the Orleans Coastal Zone. These discharges constitute coastal uses subject to the SLCRMA.

14.14.  The failure to maintain and protect against the effects of this continuous and ongoing activity by each Defendant has scarred and caused the decay and degradation of the Orleans Coastal Zone.

14.15.  In 2006, Robert Glenn Bea, Shell's former chief offshore engineer, attested in an affidavit that:

> There is clear evidence that past and current oil and gas activities have made and continue to make substantial contributions to degradations in the natural defenses against hurricane surges and waves in coastal Louisiana. ... All of these works and activities have contributed significantly to the loss of natural defenses such as barrier beaches, wetlands, and marshes. In several important cases, it was the loss of these natural defenses that contributed to the unanticipated breaches of flood protection facilities that protected the greater New Orleans area during hurricane Katrina and led to repeated flooding during hurricane Rita.

## THE SLCRMA-BASED STATUTORY, REGULATORY, AND PERMIT FRAMEWORK GOVERNING DEFENDANTS' CONDUCT

15. Each Defendant's activities in the Orleans Coastal Zone are governed by the SLCRMA and an associated state law regulatory framework governing the maintenance of dredging activities, exploration and production activities, and other "coastal uses."

16. As detailed herein, each Defendant has dredged, used, and/or bears responsibility for the network of access and pipeline canals and engaged in other exploration and production-related uses in the Orleans Coastal Zone either without required coastal use permits or in a manner that does not comply with their coastal use permits or with Louisiana's coastal zone regulations and related state regulations governing that activity, resulting in damages to the City and triggering the City's enforcement authority under the SLCRMA.

17. The damage to the Orleans Coastal Zone is caused by each Defendant's failure to abide by the originally permitted and allowed activities and to maintain its activities within the parameters allowed. The damage complained of by the City is not from what each Defendant was originally allowed to do under various permitting and regulatory regimes, but from each Defendant's failure to maintain and protect against degradation beyond that which was permitted.

18. The SLCRMA declares the state policy "[t]o support sustainable development in the coastal zone that accounts for potential impacts from hurricanes and other natural disasters and avoids

environmental degradation resulting from damage to infrastructure caused by natural disasters." La. R.S. § 49:214.22(8).

19. Any "local government with an approved program" may, along with other specified government entities, "bring such injunctive, declaratory, or other actions as are necessary to ensure that no uses are made of the coastal zone for which a coastal use permit has not been issued when required or which are not in accordance with the terms and conditions of a coastal use permit." La. R.S. § 49:214.36(D).

20. The City is a "local government with an approved program" under the SLCRMA.

21. Additionally, the City, as a "local government with an approved program," may initiate field surveillance to ensure enforcement of the coastal zone management program; issue cease and desist orders against violators of the coastal use permitting program; and suspend, revoke, or modify coastal use permits of violators of the program. La. R.S. § 49:214.36(A), (B), and (C).

22. The SLCRMA regulations promulgated pursuant to La. R.S. § 49:214.21 *et seq.* are codified at LAC 43:I.700 *et seq*. These coastal regulations provide that the coastal use permits required by La. R.S. § 214.30 are in addition to "any other permit or approval required or established pursuant to any other constitutional provision or statute." LAC 43:I.700.

23. The implementing regulations of the SLCRMA require all coastal uses be operated and maintained "to avoid to the maximum extent practicable significant … reductions in the natural supply of sediment and nutrients to the coastal system by alteration of freshwater flow; … detrimental discharges of inorganic nutrient compounds into coastal waters; … destruction or adverse alterations of streams, wetland, tidal passes, inshore waters and waterbottoms, beaches, dunes, barrier islands, and other natural biologically valuable areas or protective coastal features; … detrimental changes in existing salinity regimes; detrimental changes in littoral and sediment transport processes; adverse effect of cumulative impacts; detrimental discharges of suspended solids into coastal waters, including turbidity resulting from dredging; reductions or blockage of water flow or natural circulation patterns within or into an estuarine system or a wetland forest; discharges of pathogens or toxic substances into coastal waters; adverse alteration or destruction of archaeological, historical, or other cultural resources; … land loss, erosion, and subsidence; [and] increases in the potential for flood, hurricane and

other storm damage, or increases in the likelihood that damage will occur from such hazards[.]"
LAC 43:I.701(G)(1), (3), (5), (8), (9), (10), (11), (12), (13), (14), (19), (20).

24. The SLCRMA implementing regulations also provide the following:

24.1. "Linear facilities [pipelines and canals] shall be planned, designed, located, and built using the best practical techniques to minimize disruption of natural hydrologic and sediment transport patterns, sheet flow, and water quality and to minimize adverse impacts on wetlands." LAC 43:I.705(I).

24.2. "Linear facilities shall be planned, designed, and built using the best practical techniques to prevent bank slumping and erosion, and saltwater intrusion, and to minimize the potential for inland movement of storm-generated surges. Consideration shall be given to the use of locks in navigation canals and channels which connect more saline areas with fresher areas." LAC 43:I.705(J).

24.3. "Mineral exploration and production facilities shall be to the maximum extent practicable designed, constructed, and maintained in such a manner to maintain natural water flow regimes, avoid blocking surface drainage, and avoid erosion." LAC 43:I.719(D).

24.4. "Mineral exploration, production, and refining facilities shall be designed and constructed using best practical techniques to minimize adverse environmental impacts." LAC 43:I.719(J).

25. Additionally, these Louisiana regulations require that "[m]ineral and production sites shall be cleared, revegetated, detoxified, and otherwise restored as near as practicable to their original condition upon termination of operations to the maximum extent practicable." LAC 43:I.719(M). Requirements to employ "best practical techniques" to prevent the release of pollutants from drilling and production sites, and particular regulations regarding the storage, treatment, and disposal of waste facilities in and around wetlands further buttress these regulations. LAC 43:I.719(F) and 715(A), (C), (D), (F), (G), (H), and (I).

**DEFENDANTS HAVE VIOLATED THE SLCRMA**

26. Defendants' use of waste pits required a coastal use permit after the enactment of the SLCRMA. To the extent that the use of any such waste pit was legally commenced prior to the

enactment of SLCRMA, the continued existence of such waste pit following the cessation of operations supported by such pit constituted a new use for which a coastal use permit was required. Additionally, the closure of any such waste pits would have constituted a "use" subject to the permitting requirements of SLCRMA. Defendants have not obtained the required coastal use permits for the closure or continued operation of their waste pits in the Orleans Coastal Zone. Furthermore, such pits are in breach of the closure requirements of LAC 43:I.719(M) and of the waste requirements of LAC 43:I.715.

27. The Defendants' use of waste pits and their failures to properly close such pits have caused and are continuing to cause damage to the Orleans Coastal Zone, and the City therefore is entitled to enforce the SLCRMA against Defendants.

28. Each incident involving the Defendants' discharge of oilfield wastes from their waste pits and other oil and gas exploration and production facilities in the Orleans Coastal Zone constitutes a coastal use subject to the permitting requirements of the SLCRMA. Defendants never obtained the requisite coastal use permits for discharges into the Orleans Coastal Zone. Defendants' conduct constitutes a failure to prevent the release of toxic substances into the environment, in violation of LAC 43:I.719(F), and a violation of the waste-control requirements of LAC 43:I.715. With regard to these discharges, Defendants have also failed to comply with the clean-up obligations of LAC 43:I.719(M), to clear, revegetate, detoxify, and otherwise restore the area affected by the discharge to its original condition.

29. The Defendants' discharges and failures to properly clean up and restore the coastal zone affected by those discharges have caused and are continuing to cause damage to the Orleans Coastal Zone, and the City therefore is entitled to enforce the SLCRMA against Defendants.

30. In addition, Defendants' oil and gas exploration and production activities have caused the canals, bayous, other bodies of water, sediments, marshes, and soils in the Orleans Coastal Zone to become contaminated in excess of applicable state standards, a significant and direct impact on, and therefore a "use" of, the Orleans Coastal Zone subject to the requirements of the SLCRMA. Defendants have never obtained a coastal use permit for this contamination of the Orleans Coastal Zone; and, with regard to that contamination, have failed to comply with the maintenance and clean-up requirements of LAC 43:I.715 and 719.

31. The Defendants' introduction of contaminants and failure to properly clean up those contaminants and restore the coastal waters and lands affected thereby have caused and are continuing to cause damage to the Orleans Coastal Zone, and the City therefore is entitled to enforce the SLCRMA against Defendants.

32. Defendants' pipeline and access canals constitute coastal uses subject to the requirements of the SLCRMA. Defendants have either exceeded the parameters of the coastal use permits for those canals for which they have received coastal use permits, or they have failed to obtain the required coastal use permits. Additionally, Defendants have failed to comply with the linear-facility requirements of LAC 43:I.705 and 719.

33. The Defendants' canal-related coastal uses and their failure to abide by either the permit requirements or the SLCRMA regulatory requirements for those canals have caused and are continuing to cause damage to the Orleans Coastal Zone, and the City therefore is entitled to enforce the SLCRMA against Defendants.

34. Some of Defendants' activities alleged herein may have been permitted or authorized by the Louisiana Department of Natural Resources, Office of Conservation. "Permits issued pursuant to existing statutory authority of the office of conservation in the Department of Natural Resources for the location, drilling, exploration and production of oil, gas, sulfur or other minerals shall be issued in lieu of coastal use permits, provided that the office of conservation shall coordinate such permitting actions pursuant to R.S. 49:214.31(B) and (D) and shall ensure that all activities so permitted are consistent with the guidelines, the state program and any affected local program." La. R.S. § 49:214.31. The Office of Conservation "will issue in-lieu permits only if the proposed activity is consistent with the Coastal Use Guidelines, the Louisiana Coastal Resources Program and affected approved local programs." *Memorandum of Understanding Between the Coastal Management Section of the Department of Natural Resources and the Office of Conservation of the Department of Natural Resources* (July 8, 1980).

35. Accordingly, as to Defendants' activities in the Orleans Coastal Zone under such in-lieu permits, Defendants were obligated to comply fully with the SLCRMA and its implementing regulations.

36. Most of Defendants' conduct alleged herein was not "lawfully commenced or established" prior to the implementation of the coastal use permit process and is therefore not exempt from the SLCRMA's permitting requirement under LAC 43:I.723(B)(8). Under the federal Final Environmental Impact Statement ("FEIS") that was conducted and issued with regard to approval of Louisiana's Coastal Resourced Program, a coastal use qualifies for this exemption only if, among other requirements, "No significant change in the nature, size, location or impacts of the use or activity take place." FEIS (1980), at 85. Defendants' conduct alleged herein that was commenced or established prior to the implementation of the coastal use permit process under the SLCRMA is not exempt from the SLCRMA's requirements because Defendants' failures to maintain their uses after that point resulted in significant changes in the nature, size, and impacts of the uses.

37. Defendants are liable for the foregoing violations of the SLCRMA and the state and local regulations and program requirements pursuant to that statute, including without limitation the failure to clear, revegetate, detoxify, and restore to their original condition those portions of the Orleans Coastal Zone affected by Defendants' uses.

38. The damages, costs, and attorneys' fees provided by La. R.S. § 49:214.36 are in addition to any fine, forfeiture, other penalty, or costs provided by any other provision of law.

39. Notwithstanding any allegations or terms contained elsewhere in this Petition, the City expressly limits the scope and allegations of its claims herein as follows:

   39.1.  The City alleges only those state law causes of action that it has the right to pursue under the SLCRMA and any state and local regulations, guidelines, ordinances, and orders promulgated pursuant thereto and consistent therewith.

   39.2.  The City has not pled, and will never at any time in the future plead, any claim or cause of action arising under federal law, federal regulations, or federally issued permits, and assert no such claims herein; the City alleges no claims subject to federal question jurisdiction; the City does not allege nor is it pursuing any claims or causes of action arising under federal common law.

   39.3.  To the extent any state law claims alleged herein are preempted by federal law, the City is not now and will not in the future pursue such claims.

39.4.    The City does not pursue or allege any claims that have been discharged in bankruptcy.

39.5.    The City does not pursue or allege any claims "arising under the Constitution, laws, or treaties of the United States."

39.6.    The City does not pursue or allege any claims wherein their right to relief under any cause of action necessarily depends on a resolution of a substantial, disputed question of federal law.

39.7.    The City does not allege or pursue any claims arising under the Rivers and Harbors Act of 1899, or under any U.S. Army Corps of Engineers regulations or permits.

39.8.    The City does not pursue or allege any claims arising under the Clean Water Act of 1972 or any regulations or permits issued pursuant thereto.

39.9.    The City does not allege that it is the third party beneficiary of any obligations between Defendants and any governmental body, or of any permitting scheme, permit, contract, right-of-way agreement, conventional servitude, servitude of personal right-of-use, or legal servitude.

39.10.   The City does not allege that it represents any class; the City brings this action only on its own behalf and not on behalf of any class or group of individuals or legal entities.

39.11.   The City does not allege that any conduct on the Outer Continental Shelf violated the SLCRMA. None of the conduct alleged herein occurred on the Outer Continental Shelf. The City does not pursue or allege any claim arising under the Outer Continental Shelf Lands Act.

39.12.   The City does not allege or pursue any claim for conduct occurring on a federal enclave or for damage that occurred on a federal enclave. The City does not pursue or allege any claims regarding any land held in trust by the federal government, its officers, agencies, or agents. The City does not pursue or allege any claims over which the federal government contests title. The City does not allege or pursue any claims for damage to any federal floodwalls, federal levees, or any other federal installations or properties.

39.13.  The City does not allege or pursue any claim pursuant to Louisiana tort law, contract law, mineral law, or property law.

39.14.  The City does not allege or pursue any claims that are subject to the All Writs Act, 28 U.S.C. § 1651; subject to the Convention on the Recognition of Foreign Arbitral Awards, 9 U.S.C. § 201; or subject to the Oil Pollution Act of 1990.

39.15.  The City does not allege or pursue any claims arising under the federal Natural Gas Act, 15 U.S.C. § 717-717w.

39.16.  The City does not allege or pursue any criminal or quasi-criminal remedies set forth in La. R.S. § 49:214.36.

40.  Subject to the above limitations, the City claims all damages and remedies appropriate under the SLCRMA, including but not limited to damages, payment of restoration costs, order of actual restoration of disturbed areas, reasonable and proper sanctions, and costs and reasonable attorneys' fees, pursuant to La. R.S. § 49:214.36(E); as well as any declaratory and injunctive relief deemed reasonable and necessary pursuant to La. R.S. § 49:214.36(D).

41.  The City alleges that Defendants are solidarily liable for the damage caused by Defendants in the Orleans Coastal Zone. The SLCRMA and its implementing regulations provide that Defendants are liable for the cumulative impacts contributed to by their violative coastal uses. "Cumulative impacts" are those "impacts increasing in significance due to the collective effects of a number of activities." LAC 43:I.700. Among the expressly stated factors that are to be "utilized by the permitting authority in evaluating whether the proposed use is in compliance with the [SLCRMA] guidelines" are the "likelihood of, and extent of impacts of, resulting secondary impacts and cumulative impacts." LAC 43:I.701(F)(15). In pursuing "the policy of the costal resources program to avoid ... adverse impacts," all coastal uses are to "be planned, sited, designed, constructed, operated, and maintained to avoid to the maximum extent practicable significant ... adverse effects of cumulative impacts." LAC 43:I.701(G)(10). Defendants' unpermitted uses of the Orleans Coastal Zone and violations of coastal use permits resulted in these prohibited cumulative impacts of the Orleans Coastal Zone. Further, the restoration required by the SLCRMA, to be feasible and practical, must be applied in an indivisible, unified manner; "[t]he task of ... restoring and developing a sustainable coastline

will require implementation of a holistic, comprehensive engineering plan." La. R.S. §

49:214.4.1(A)(3); *see also* La. C.C. arts. 1815, 1818. For these reasons, Defendants' liability

to the City under the SLCRMA is solidary.

42. The City demands trial by jury.

   **WHEREFORE**, the City prays that, after due proceedings be had, there be judgment

rendered in its favor and against each Defendant finding that each Defendant is liable and indebted

to the City for:

   a)  All damages and other appropriate relief as specifically provided under the SLCRMA
       for violations of all applicable state coastal zone management program statutes and
       regulations within the Orleans Coastal Zone;

   b)  The costs necessary to clear, revegetate, detoxify, and otherwise restore the Orleans
       Coastal Zone as near as practicable to its original condition pursuant to LAC
       43:I.705(N), 711(F), and 719(M);

   c)  Actual restoration of the Orleans Coastal Zone to its original condition;

   d)  The award of costs, expenses and reasonable attorneys' fees in favor of the City
       pursuant to La. R.S. § 49:214.36(E);

   e)  Pre-judgment and post-judgment interest at the maximum rate allowable by law; and

   f)  Such other and further relief which the Court deems necessary and proper at law and
       in equity and that may be just and reasonable under the circumstances of this matter,
       subject to the limitations expressly stated herein as to those claims and causes of action
       the City is neither alleging nor pursuing.

   Finally, the City demands that the claims asserted herein be adjudicated by jury trial.

                              Respectfully Submitted,


                              Sunni J. LeBeouf (#28633)
                              **City Attorney**
                              **City of New Orleans**
                              1300 Perdido Street, Ste 5E03
                              New Orleans, Louisiana 70112
                              Telephone: (504) 658-9800

Gladstone N. Jones, III (#22221)
Eberhard D. Garrison (#22058)
Kevin E. Huddell (#26930)
Emma Elizabeth Antin Daschbach (#27358)
H.S. Bartlett III (#26795)
Lindsay E. Reeves (#32703)
Christopher W. Swanson (#37888)
**Jones, Swanson, Huddell & Garrison, L.L.C.**
601 Poydras St., Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508

Bernard E. Boudreaux, Jr. (#02219)
John T. Arnold (#31601)
**Jones, Swanson, Huddell & Garrison, L.L.C.**
One American Place
301 Main Street, Suite 1920
Baton Rouge, Louisiana 70801
Telephone: (225) 810-3165
Fax: (225) 810-3169

James M. Garner (#19589)
Peter Hilbert (#6871)
Joshua S. Force (#21975)
Thomas J. Madigan, II (#28132)
Brandon Keay (#36528)
**Sher Garner Cahill Richter Klein & Hilbert, L.L.C.**
909 Poydras Street
Suite 2800
New Orleans, Louisiana 70112
Telphone: (504) 299-2100
Facsimile: (504) 299-2300

Don A. Rouzan (#28829)
Dana J. Henry (#26654)
**Don A. Rouzan & Associates, LLC**
1010 Common Street
Suite 2410
New Orleans, Louisiana 70112

James R. Swanson (#18455)
Lance C. McCardle (#29971)
Benjamin D. Reichard (#31933)
E. Blair Schilling (#35308)
**Fishman Haygood, L.L.P.**
201 St. Charles Ave.
Suite 4600
New Orleans, Louisiana 70170
Telephone: (504) 586-5252
Facsimile: (504) 586-5250

J. Michael Veron (#7570)
J. Rock Palermo III (#21793)
Turner D. Brumby (#33519)

Peyton Pawlicki (#37826)
**Veron, Bice, Palermo & Wilson, L.L.C.**
721 Kirby St. (70601)
P.O. Box 2125
Lake Charles, Louisiana 70602
Telephone: (337) 310-1600
Facsimile: (337) 310-1601

*Counsel for the City of New Orleans*

**[PLEASE SERVE AS FOLLOWS:]**

**Defendant, Apache Louisiana Minerals LLC**
**Through its Registered Agent:**
C T Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**Defendant, Aspect Energy, L.L.C**
**Through its Registered Agent:**
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**Defendant, Chaparral Energy, L.L.C.**
**Through its Registered Agent:**
Capitol Corporate Services, Inc.
8550 United Plaza Building II
Suite 305
Baton Rouge, LA 70809

**Defendant, Chevron U.S.A. Inc.**
**Through its Registered Agent:**
The Prentice-Hall Corporation System, Inc.
501 Louisiana Avenue
Baton Rouge, LA 70802

**Defendant, Collins Pipeline Company**
**Through its Registered Agent:**
C T Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**Defendant, Entergy New Orleans, LLC**
**Through its Registered Agent:**
Marcus V. Brown
639 Loyola Avenue
26th Floor
New Orleans, LA 70113

**Defendant, EOG Resources, Inc.**
**Through its Registered Agent:**
C T Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**Defendant, ExxonMobil Pipeline Company**
**Through its Registered Agent:**
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**Defendant, Gulf South Pipeline Company, LP**
**Through its Registered Agent:**
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**Defendant, Southern Natural Gas Company, L.L.C.**
**Through its Registered Agent:**
C T Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**Defendant, Whiting Oil and Gas Corporation**
**Through its Registered Agent:**
C T Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816