**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **THE CITY OF NEW ORLEANS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 19-8290** |
| **APACHE LOUISIANA MINERALS,** | **SECTION: T (5)** |
| **LLC, ASPECT ENERGY, L.L.C.,** | |
| **CHEVRON U.S.A. INC., COLLINS** | |
| **PIPELINE COMPANY, ENTERGY** | |
| **NEW ORLEANS, LLC, EOG** | |
| **RESOURCES, INC., EXXONMOBIL** | |
| **PIPELINE COMPANY, GULF SOUTH** | |
| **PIPELINE COMPANY, LP,** | |
| **SOUTHERN NATURAL GAS** | |
| **COMPANY, L.L.C., WHITING OIL** | |
| **AND GAS CORPORATION** | |

**ORDER AND REASONS**

The Court has before it Plaintiff City of New Orleans's ("New Orleans") Motion to Remand the above-captioned matter back to Louisiana state court. R. Doc. 77. The Motion was filed in June 2019, but this case was stayed before it was ruled on by the Court. R. Doc. 116. When the Court reopened this matter in May 2023, it ordered Plaintiff's Motion to Remand be returned to the docket for the Court's consideration. R. Doc. 134. Prior to the stay of this case, memoranda in opposition to New Orleans's Motion had been filed by Defendants Entergy New Orleans, LLC ("Entergy"), R. Doc. 80, Southern National Gas Co., LLC ("Southern"), R. Doc 82, and Chevron U.S.A. Inc. ("Chevron"), R. Doc. 94 (collectively "Defendants"). New Orleans also filed a reply memorandum, R. Doc. 97, and Defendants filed two sur-replies, R. Docs. 107; 109. Subsequent to the return of the instant Motion to the Court's docket, Chevron and Defendant ExxonMobile Pipeline Company ("Exxon") filed an additional memorandum in opposition. R. Doc. 135. Finally, pursuant to an order of this Court, R. Doc. 136, New Orleans and Entergy, Exxon, and Chevron

1

filed supplemental briefing on the question of the Court's diversity jurisdiction over this action. R. Docs. 139; 137; 138; 140. Having considered the parties' extensive briefing, as well as the applicable law and facts, the Court will DENY New Orleans's Motion.

I.      BACKGROUND

This case is one of many seeking to determine the oil and gas industry's responsibility, and consequent restoration obligations, for the rapid loss and deterioration of Louisiana's coastal wetlands. Louisiana coastal parishes and cities filed several lawsuits in state courts against more than 200 oil and gas companies, alleging their dredging, drilling, and waste disposal caused coastal land loss and pollution and violated the Louisiana State and Local Coastal Resources Management Act, La. R.S. §§ 49:214.21 *et seq.* ("SLCRMA"). The SLCRMA provides a cause of action for violations of a state-issued coastal use permit or for the failure to obtain a required coastal use permit. La. R.S. § 49:214.36(D). Among the exemptions from coastal use permitting requirements are uses which do not have a significant impact on coastal waters, *see* La. R.S. § 49:214.34(A)(10), and activities "lawfully commenced" prior to the effective date of the coastal use permit program, *see* La. R.S. § 49:214.34(C)(2). Each lawsuit involves oil and gas operations conducted in different operational areas and is brought against a different but often overlapping cast of defendants. *See, e.g.*, *Par. of Plaquemines v. Riverwood Prod. Co.*, 2019 WL 2271118 (E.D. La. May 28, 2019), *aff'd sub nom. Par. of Plaquemines v. Chevron USA, Inc.*, 969 F.3d 502 (5th Cir. 2020), *opinion withdrawn and superseded on reh'g*, 7 F.4th 362 (5th Cir. 2021), *and aff'd in part*, *rev'd in part and remanded sub nom. Par. of Plaquemines v. Chevron USA, Inc.*, 7 F.4th 362 (5th Cir. 2021). The plaintiffs seek recovery of damages, costs necessary to restore the coastal zone, actual restoration, and reasonable costs and attorney's fees. *Id.*

In the instant case, New Orleans filed a petition for damages and injunctive relief under the SLCRMA against Defendants in Louisiana State court, alleging each named Defendant has engaged in and enabled a course of continuous and relentless dredging, drilling, extracting, and transport of oil and gas in and across the coastal wetlands in New Orleans for decades. R. Doc. 1-1 at 3.  New Orleans asserts Defendants failed to contain their operations within permitted bounds or failed to secure a coastal use permit when required, causing damage to the coastal lands in the city, for which Defendants are liable under the SLCRMA. *Id.* Although New Orleans strategically attempted to disclaim in its petition any cause of action that would trigger federal jurisdiction over its claims, *see* R. Doc. 1-1 at 15–16, Defendants removed the action to this Court, asserting federal jurisdiction was available to them pursuant to 28 U.S.C. §§ 1331, 1332, 1333, 1367, 1441 and 1442, and 43 U.S.C. § 1349. *See* R. Docs. 1; 22. New Orleans now asks the Court to remand this matter back to state court, arguing none of Defendants' purported grounds for federal jurisdiction are legally supportable. R. Doc. 77-1.

## II.     LAW AND ANALYSIS

Defendants have presented multiple grounds upon which they argue the Court may assert jurisdiction over this action, including federal question jurisdiction, federal officer removal jurisdiction, admiralty jurisdiction, and diversity jurisdiction. *See* R. Doc. 1 at 2–16. A holding by this Court sustaining any of Defendants' asserted bases for its jurisdiction would be sufficient for this Court to find it properly has subject matter jurisdiction over this action and to deny Plaintiff's Motion to Remand. Thus, the Court will first address Defendants' argument that it can assert diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Section 1332 provides, in relevant part, that federal courts shall have jurisdiction over all civil actions where the matter in controversy exceeds $75,000 and is between citizens of different

states.[1] It is well established that federal diversity jurisdiction requires complete diversity; that is, for a court to assert jurisdiction over a suit under § 1332, no party on one side of the suit may be a citizen of the same state as any party on the other side of the suit. *See, e.g.*, *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806).

In this case, the sole plaintiff, New Orleans, being a Louisiana city, is a citizen of Louisiana. Defendants are citizens of various states, but it is uncontested that the only Defendant with Louisiana citizenship is Entergy. *See* R. Doc. 8-4. Entergy's Louisiana citizenship would normally render diversity incomplete, thus precluding the Court from asserting diversity jurisdiction. However, Defendants argue Entergy was improperly joined in this action, and New Orleans's claims against it must be dismissed. Therefore, Defendants argue Entergy's citizenship is irrelevant to the Court's jurisdictional analysis under § 1332 and, in the absence of Entergy, diversity between the parties is complete. *See Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) ("[I]if the plaintiff improperly joins a non-diverse defendant, then the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant[s].").

The United States Supreme Court has recognized two ways by which a party may establish improper, or "fraudulent,"[2] joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood*, 385 F.3d at 573 (citing *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). "The test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of

---

[1] No party argues the amount in controversy in this case does not exceed $75,000.
[2] Courts use the terms "improper joinder" and "fraudulent joinder" interchangeably, but "improper joinder" is the preferred term in the Fifth Circuit. *See Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 473 n.1 (5th Cir. 2022) (citing *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc)).

recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* Here, Defendants argue Entergy was improperly joined because New Orleans has no reasonable possibility of success against Entergy based on the claims it raises in this action. *See* R. Docs. 80 at 6–8; 107 at 2–4; 137; 138; 140.

Defendants' argument is this: The sole basis of New Orleans's claims against Entergy is Entergy's ownership of three natural gas transmission pipelines (the "Pipelines") located in part within Orleans Parish. R. Doc. 97 at 12–13. New Orleans alleges Entergy's "ongoing failure to maintain the banks of its canals" in which the Pipelines are seated has caused environmental damage giving rise to a SLCRMA claim. *Id.* at 13. However, the SLCRMA's "Blanket Exception" provides, in pertinent part, that "[i]ndividual specific uses legally commenced or established prior to the effective date of the coastal use permit program shall not require a coastal use permit." La. R.S. 214.34(C)(2); *see also* L.A.C. 43:I.723(B)(8)(a) ("No use or activity shall require a coastal use permit if . . . the use or activity was lawfully commenced or established prior to the implementation of [the] coastal use permit process[.]" The effective date of Louisiana's coastal use permit program was September 20, 1980. *See* U.S. DEPT. OF COMMERCE, NAT'L OCEANIC AND ATMOSPHERIC ADMIN. OFC. OF COASTAL ZONE MGT., AND LA. DEPT. OF NATURAL RESOURCES COASTAL MANAGEMENT SECTION, "LOUISIANA COASTAL RESOURCES PROGRAM FINAL ENVIRONMENTAL IMPACT STATEMENT" 46 (1980) ("FEIS").[3] The Pipelines were constructed or acquired by Entergy prior September 20, 1980, and New Orleans does not claim any of Entergy's pre-1980 conduct was unlawful—thus, New Orleans does not accuse Entergy of any conduct that

---

[3] Despite its centrality to the instant issue, as discussed *infra*, no party appears to have entered the entire FEIS into the record of this case. However, it is available at: https://www.govinfo.gov/content/pkg/CZIC-ht393-l8-f53-1980/pdf/CZIC-ht393-l8-f53-1980.pdf.

would have required a coastal use permit. *See* R. Doc. 80 at 6–7. The SLCRMA provides a cause of action *only* for violations of a state-issued coastal use permit or failure to obtain a required coastal use permit. *See* La. R.S. § 49:214.36(D). Given that none of Entergy's asserted conduct required a coastal use permit, Entergy cannot have failed to obtain a required coastal use permit, nor could it have violated a coastal use permit. Accordingly, New Orleans does not raise any viable claim against Entergy under the SLCRMA and has no reasonable possibility of success against Entergy in this action. Entergy is thus improperly joined.

New Orleans attempts to avoid this conclusion in two ways. First, New Orleans points to *Smallwood*, in which the Fifth Circuit addressed the doctrine of improper joinder and held "when, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit." 385 F.3d at 574. As that court explained, "[i]n such cases, it makes little sense to single out the in-state defendants as "sham" defendants and call their joinder improper. In such circumstances, the allegation of improper joinder is actually an attack on the merits of plaintiff's case." *Id.* New Orleans argues a holding by this Court that it has no reasonable possibility of success against Entergy based on Entergy's conduct prior to the effective date of Louisiana's coastal use permit program would "necessarily compel[] the same result" for the diverse defendants; thus, Entergy is not improperly joined under *Smallwood*. R. Doc. 77-1 at 40–42.

However, as Defendants point out, the Fifth Circuit has held *Smallwood* applies "[i]f, but *only* if, the showing which forecloses [the plaintiff's] claims against the non-diverse defendants *necessarily* and *equally compels* foreclosure of all [its] claims against all the diverse

defendants[.]" *Boone v. Citigroup, Inc.*, 416 F.3d 382, 391 (5th Cir. 2005) (emphasis original). *Smallwood* does not apply when the showing relative to the in-state defendant is insufficient to foreclose every claim against the diverse defendants. Here, while New Orleans claims violations of the SLCRMA by Entergy relating solely to Entergy's pre-1980 conduct, on the face of its complaint at least some of New Orleans's claims against the diverse defendants relate to post-1980 conduct. *See, e.g.*, R. Doc. 1-1 at 8 (alleging 100 years of oil and gas exploration and production by Defendants, beginning in the first half of the 20th century); 10 (alleging Defendants' failure to obtain necessary coastal use permits or failure to comply with their costal use permits under SLCRMA); 15 (alleging some of the conduct at issue occurred after the implementation of the coastal use permit process). Thus, a holding by this Court that New Orleans has no reasonable possibility of success on its claims against Entergy because all of Entergy's alleged conduct occurred prior to the effective date of Louisiana's coastal use permit program would not "*necessarily* and *equally compel*[] foreclosure of all [New Orleans's] claims against all the diverse defendants." *Boone*, 416 F.3d at 391. Accordingly, *Smallwood* does not preclude a holding that Entergy is improperly joined in this action.

Second, New Orleans points to language in the FEIS to argue it does have a reasonable possibility of success on its claims against Entergy. *See* R. Doc. 77-1 at 49. By way of background to this argument, in 1972, the United States Congress enacted the Coastal Zone Management Act ("CZMA"), 16 U.S.C. § 1451. The CZMA is administered by the National Oceanic and Atmospheric Administration (NOAA), and, *inter alia*, provides federal grants to states with their own coastal zone management programs, provided those programs have been approved by the Secretary of Commerce.[4] *See* EVA LIPIEC, CONG. RSCH. SERV., R45460, COASTAL ZONE

---

[4] NOAA derives its authority to administer the CZMA from the Department of Commerce. *See* 15 C.F.R. 930.16 (1990).

MANAGEMENT ACT: OVERVIEW AND ISSUES FOR CONGRESS 2 (2019). After enacting the SLCRMA

in 1978, and under its authority, Louisiana developed the Louisiana Coastal Resources Program

("LCRP") as a coastal zone management program for approval and funding under the CZMA. *See*

FEIS at 1; 13–14. The LCRP established Louisiana's coastal use permit program. *See id.* at 1.

The National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, "is a

procedural statute intended to ensure Federal agencies consider the environmental impacts of their

actions in the decision-making process." 40 C.F.R. 1500.1. As is relevant here, NEPA "requires

Federal agencies to provide a detailed statement on proposals for major Federal actions

significantly affecting the quality of the human environment."[5] *Id.* These "detailed statements" are

called environmental impact statements. In conjunction with the Louisiana Department of Natural

Resources ("LDNR"), NOAA authored first the Draft Environmental Impact Statement (DEIS),[6]

which was then revised into the FEIS.

Following the SLCRMA's provision that "[i]ndividual specific uses legally commenced or

established prior to the effective date of the coastal use permit program shall not require a coastal

use permit[,]" La. R.S. 214.34(C)(2); *see also* FEIS at b-20, the LCRP's "Rules and Procedures

for Coastal Use Permits" also included that exemption: "No use or activity shall require a coastal

use permit if . . . [t]he use or activity was lawfully commenced or established prior to the

implementation of the coastal use permit process[.]" L.A.C. 43:I.723(B)(8)(a); *see also* FEIS at

c1-6. However, the FEIS included an additional "gloss" to the Blanket Exception in describing

how the policies of the LCRP would be implemented. *See Riverwood*, 2019 WL 2271118, at *2

n.10) ("The FEIS authors added this gloss to the "lawfully commenced" exemption, ostensibly to

---

[5] This requirement was implicated here because an approved LCRP would receive federal funding under the CZMA.
[6] Available at: https://data.dnr.la.gov/lcp/Permits/Draft%20Environmental%20Impact%20Statement%2009-21-1979.pdf.

offer guidance on the types of activities that would be exempt"). Without any reference to the source of these ostensible exceptions to the Blanket Exception, the FEIS stated, as is relevant here, that, even if a use or activity was "lawfully commenced or established prior to the implementation of the coastal use permit process[,]" it would not be exempted from the permit process unless "[n]o significant change in the nature, size, location or impacts of the use or activity take place" (the "Significant Change Exception").  FEIS at 85.[7] Based on this statement, New Orleans argues it does have a reasonable possibility of success against Entergy in this action because some "significant change" has occurred in the "nature, size, location or impacts of" Entergy's challenged activities. R. Doc. 1-1 at 15.

On the other hand, Defendants argue the Significant Change Exception was not legislatively enacted, nor promulgated as an agency "rule, regulation or guideline . . . pursuant to the rulemaking procedures set forth in the Administrative Procedure Act[,]" as the SLCRMA requires. *See* La. R. S. § 49:214.37 ("Any rule, regulation, or guideline shall be proposed or adopted pursuant to the rulemaking procedures set forth in the Administrative Procedure Act and shall be subject to approval by the House Committee on Natural Resources and Environment and Senate Committee on Natural Resources"); *see also* La. R. S. § 49:950 *et seq.* (listing the procedures an agency must follow to promulgate administrative rules). Defendants thus assert the Significant Change Exception is not part of Louisiana law, cannot bind them, and cannot give rise to any viable claim against Entergy. *See* R. Docs. 137; 138; 140.

---

[7] In the FEIS, this gloss on the Blanket Exception appears between quotation marks, but includes no citation. *See* FEIS at 85. Neither the Court nor the parties have been able to identify any source from which this language may have been quoted, as it appears to exist only in the FEIS and the DEIS. However, Entergy points out that the DEIS, the draft of the FEIS, includes the same gloss without quotation marks. *See* DEIS at 88; R. Doc. 137. Thus, it seems most likely that this language is original to the environmental impact statement drafted for the LCRP and not sourced from elsewhere.

The Fifth Circuit has held that environmental impact statements lack the force of substantive law. In *Noe v. Metropolitan Atlanta Rapid Trans Auth.*, that court considered whether a plaintiff could bring suit against Atlanta's Transit Authority for alleged business losses due to construction noise that exceeded the noise levels predicted by the environmental impact statement for a project. 644 F.2d 434, 436 (5th Cir. 1981). The Fifth Circuit affirmed the district court's dismissal of the plaintiff's complaint, explaining that the violation of an environmental impact statement does not give right to a cause of action under NEPA because NEPA "requires only that . . . an environmental impact statement be produced so that the individuals responsible for making the decision to go ahead with or stop [a] project [that may have an environmental impact] do so on a well-informed basis. In that sense, *NEPA provides procedural rather than substantive protection.*" *Id.* at 483 (emphasis added); *see also Lichterman v. Pickwick Pines Marina, Inc.*, 2010 WL 717840, at *4 (N.D. Miss. Feb. 22, 2010) (relying on *Noe* to hold that plaintiffs had "no legal right to sue for the enforcement of specific conditions contained in" environmental impact reports issued pursuant to NEPA). In this way, an environmental impact statement is a "factor[] in the decisionmaking process: the EIS is not itself a decision document." *Sierra Club v. Sigler*, 695 F.2d 957, 967 (5th Cir. 1983).

The United States Supreme Court has also overturned a Ninth Circuit holding that NEPA requires "action be taken to mitigate the adverse effects of major federal actions" such that an environmental impact statement must include "a detailed explanation of specific measures which *will* be employed to mitigate the adverse impacts of a proposed action[.]" *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 352–54 (1989) (quoting *Methow Valley Citizens Council v. Reg'l Forester*, 833 F.2d 810, 819 (9th Cir. 1987), *rev'd sub nom. Robertson v. Methow Valley Citizens Council*, 490 U.S. 332 (1989)) (emphasis added by Supreme Court). The Supreme Court

explained that NEPA, as a procedural statute, "does not mandate particular results, but simply prescribes the necessary process." *Robertson*, 490 U.S. at 350. "If the adverse environmental effects of the proposed action are adequately identified and evaluated, the agency is not constrained by NEPA from deciding that other values outweigh the environmental costs." *Id.* Thus, "it would not have violated NEPA if the [agency], after complying with the Act's procedural prerequisites, had decided that the benefits" of a particular action outweighed the environmental costs. *Id.* at 351. Said another way, NEPA requires federal agencies to *complete* environmental impact statements, but it doesn't require agencies to *follow* them.

New Orleans argues the Significant Change Exception in the FEIS is nonetheless enforceable because "[t]he FEIS is rooted in state law and forms the basis of formal federal approval of the legislatively created [LCRP]." R. Doc. 139 at 1. Thus, it argues, the provisions of Louisiana's coastal use permit program "must be interpreted in a manner consistent with the FEIS." *Id.* at 4. However, whether federal approval of the LCRP hinged on language in the FEIS is irrelevant to the question of whether the FEIS is a binding part of *Louisiana* law.[8] As discussed *supra*, environmental impact statements do not carry any force of federal law. Thus, the FEIS can be binding only if it has been legislatively enacted *by Louisiana* or otherwise incorporated into Louisiana law in some way. It is of course possible that, as New Orleans argues "the NOAA relied on the statements and provisions in the FEIS" to approve the LCRP. But the reliance of a federal agency on *its own description* of how a Louisiana law operates, even if drafted in conjunction with a Louisiana administrative agency, cannot alter the plain meaning of Louisiana law.[9] The plain

---

[8] The Court notes that Federal approval was not required for Louisiana to *enact* the LCRP, but only to receive funding for its coastal management program under the CZMA. *See* 16 U.S.C. § 1455.

[9] New Orleans points out that the LDNR's "Coastal Users' Guide" refers to the FEIS as "the official program document for Federal approval pursuant to the [CZMA]." R. Doc. 139 at 6. This is similarly irrelevant. As explained, any reliance on the FEIS by a Federal agency in approving the LDRP does not render the FEIS Louisiana law. Nor does the LDNR's acknowledgement of that reliance.

texts of the SLCRMA and the LCRP both state explicitly, and without exception or caveat, that activities legally commenced prior to the effective date of the coastal use permit program *shall not* require a coastal use permit. *See* La. R.S. 214.34(C)(2); L.A.C. 43:I.723(B)(8)(a). When the meaning of the plain text is clear, that interpretation must be adopted without further inquiry. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1749 (2020).

New Orleans asserts the FEIS is "a product of Louisiana law" because, it claims, Louisiana "promulgated state regulations pursuant to the [SLCRMA], including the FEIS." R. Doc. 139 at 2. But this is plainly untrue. The SLCRMA requires that "[a]ny rule, regulation, or guideline [issued under SLCRMA] shall be proposed or adopted pursuant to the rulemaking procedures set forth in the Administrative Procedure Act and shall be subject to approval by the House Committee on Natural Resources and Environment and Senate Committee on Natural Resources." La. R.S. § 49:214.37. There is no indication that the FEIS in its entirety, nor the Significant Change Exception in particular, went through this legislatively-mandated procedure for enaction as part of Louisiana law. As stated *supra*, the "Rules and Procedures" of the LCRP echo the SLCRMA's Blanket Exception. L.A.C. 43:I.723(B)(8)(a); *see also* FEIS at c1-6.  And, in fact, the Coastal Use Guidelines which *were* enacted though this procedure and ultimately approved by the Governor of Louisiana, *see* FEIS at 45–46, specify they shall not "be interpreted so as to require permits for specific uses legally commenced or established prior to the effective date of the coastal use permit program nor to normal maintenance or repair of such uses." FEIS at 55. New Orleans may wish that Louisiana had enacted the Significant Change Exception into law, but it did not.

This holding is further evidenced by the Office of Coastal Management ("OCM") of the LDNR's actual enforcement of the LCRP. As the Louisiana Supreme Court has explained, the interpretation of a statute "by the agency charged with its enforcement, when adopted soon after

the enactment of the statute and adhered to over a long period of time, can be persuasive as to the proper interpretation of the statute." *S. Message Serv., Inc. v. La. Pub. Serv. Comm'n*, 89-CA-2121 (La. 12/22/89), 554 So. 2d 47, 54; *see also Bd. of Trs. of State Emps. Grp. Benefits Program v. St. Landry Par. Bd.*, 844 So. 2d 90, 100 (La. Ct. App. 2003) (describing this as the "doctrine of contemporaneous construction" and explaining: "Under this doctrine, when an administrative body has, over a long period of time, placed an interpretation upon a legislative enactment, that interpretation is given substantial and often decisive weight in the legislation's interpretation"). Exxon asserts that, in the past forty-three years, "OCM has *never* relied on the FEIS in interpreting the [Blanket Exception], nor has it interpreted the [Blanket Exception] consistent with the City's reading of the FEIS." R. Doc. 138 at 2–7 (also providing several examples of OCM disclaiming regulatory authority over pre-1980 conduct without any consideration of the Significant Change Exception even, in some cases, where a significant change in the environmental impact of that conduct *had* occurred). The Court has found no evidence to contradict this assertion, and New Orleans has provided none.

Thus, as Defendants argue, the FEIS was never legislatively enacted and never adopted as part of Louisiana law, and the Significant Change Exception contained therein cannot give rise to any viable claim against Entergy under the SLCRMA. Accordingly, there is "no reasonable basis for [this Court] to predict that [New Orleans] might be able to recover against" Entergy. *Smallwood*, 385 F.3d at 573. Entergy is improperly joined.

Having held Entergy to be joined in this action improperly, the Court may disregard Entergy's citizenship, dismiss Entergy from this case, and exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over the remaining diverse defendants. *See Flagg*, 819 F.3d at 136. Having determined it may assert diversity jurisdiction over this action, the Court need not address

the remainder of the parties' jurisdictional arguments. Federal diversity jurisdiction is proper, and New Orleans's Motion to Remand must be denied.

## III.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that New Orleans's Motion to Remand, R. Doc. 77, is **DENIED**.

**IT IS FURTHER ORDERED** that New Orleans's claims against Entergy are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, this 15th day of November, 2023.


_____
**GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE**